1   JEFFREY L. RICHARDSON (SBN 167274)
      jlr@msk.com
2   ANDREW C. SPITSER (SBN 255917)
      acs@msk.com
3   MITCHELL SILBERBERG & KNUPP LLP
    11377 West Olympic Boulevard
4   Los Angeles, CA  90064-1683
    Telephone: (310) 312-2000
5   Facsimile: (310) 312-3100

6   Attorneys for Plaintiff
    Second Street Corporation

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11   SECOND STREET CORPORATION,        CASE NO. 2:16-cv-05889
     a California corporation,
12                                      **COMPLAINT FOR:**
                 Plaintiff,
13                                      **(1) EXPRESS WARRANTY;**
           v.                           **(2) EXPRESS WARRANTY;**
14                                      **(3) BREACH OF CONTRACT;**
     EXCEPTIONAL INNOVATION, INC.,      **(4) BREACH OF CONTRACT;**
15   an Ohio corporation; LG           **(5) RESTITUTION AFTER**
     ELECTRONICS U.S.A., INC., a            **RESCISSION;**
16   Delaware corporation; DOES 1-6,   **(6) RESTITUTION AFTER**
     inclusive,                             **RESCISSION;**
17                                      **(7) NEGLIGENCE;**
                 Defendants.            **(8) NEGLIGENCE;**
18                                      **(9) VIOLATION OF**
                                            **CALIFORNIA'S UNFAIR**
19                                          **COMPETITION LAW, CAL.**
                                            **BUS. & PROF. CODE §§ 17200**
20                                          ***ET SEQ.*;**
                                        **(10) VIOLATION OF**
21                                          **CALIFORNIA'S UNFAIR**
                                            **COMPETITION LAW, CAL.**
22                                          **BUS. & PROF. CODE §§ 17200**
                                            ***ET SEQ.*;**
23                                      **(11) NEGLIGENT**
                                            **MISREPRESENTATION;**
24                                      **(12) NEGLIGENT**
                                            **MISREPRESENTATION**
25
                                        **DEMAND FOR JURY TRIAL**
26

27

28

COMPLAINT

Plaintiff Second Street Corporation ("Plaintiff"), by and through its undersigned attorneys, makes the following allegations and claims against defendants Exceptional Innovation, Inc. ("EI") and LG Electronics U.S.A., Inc. ("LG") (collectively, "Defendants"), and demands trial by jury of all claims properly triable thereby.

## PRELIMINARY STATEMENT

1.     This action is brought by Plaintiff to recover damages and/or seek restitution of all amounts paid in connection with the purchase of in-warranty televisions and related hardware and services from Defendants for use in Plaintiff's high-end, luxury hotel, the Huntley Hotel.

2.     From November 2014 through August 2015, Plaintiff purchased from LG 162 specialized internet protocol televisions (also known as Smart TVs) ("IPTVs") advertised and sold to Plaintiff as "hospitality" televisions suitable for use in guest rooms and other locations in the Huntley Hotel.  In September 2014, Plaintiff contracted with EI's predecessor, Quadriga, to provide various content, billing services, and related services and hardware for use with LG's IPTVs in the Huntley Hotel.

3.     Soon after the IPTVs were purchased and installed and Plaintiff began using Quadriga's (later EI's) services, Plaintiff began receiving numerous customer complaints regarding serious problems with the images displayed on the televisions.  Movies guests had ordered froze, pixelated, or stopped playing. Television programs and movies looked pixelated, fuzzy, and blurry.  The screen went blank, or stuck on one of various menus.  Occasionally the entire system would reboot without prompting, interrupting guests' entertainment.  In short, the television entertainment system was nearly unusable.

4.     Plaintiff immediately contacted Defendants to request urgent correction of these serious problems.  But to date, despite the fact that Quadriga's

(now EI's) services and LG's IPTVs still are in warranty, Defendants have been unable or unwilling to fix the problems.  Instead, the serious problems with Defendants' products and services continue unabated, and even continue to worsen.

5.      As a result, Plaintiff has been significantly harmed.  Plaintiff has paid well over $250,000 to LG for IPTVs and at least $40,184.17 to EI/Quadriga for head-end hardware and services, which do not function adequately.  Plaintiff has been forced to refund numerous guest purchases, and has lost significant revenue from foregone in-room entertainment purchases by guests who are aware of the persistent television system problems and who have decided, therefore, not to order in-room entertainment.  Moreover, in or around June 2016, Plaintiff was forced to completely disable all video-on-demand services at the Huntley Hotel due to Defendants' inability to satisfactorily provide such services.  Because of Defendants' failure to solve these and related problems, Plaintiff also was forced to hire an independent consultant to attempt to solve the problems, at further significant cost to Plaintiff.

6.      Worst of all, Plaintiff's reputation has been significantly harmed by the repeated issues with its in-room entertainment.  Reviews on prominent websites such as TripAdvisor.com are littered with complaints and negative reviews, detailing serious television problems those guests have encountered.

7.      In short, the televisions and related hardware and services Plaintiff purchased from Defendants have not functioned in the manner and for the purpose they were intended, and the Huntley Hotel has been seriously damaged by that failure.  Defendants must make Plaintiff whole for the serious defects in the products and services they have provided.

8.      Plaintiff is informed and believes, and on that basis alleges, that the defects and failures of the Quadriga Services and LG Televisions, as defined and described herein, are common to multiple purchasers of those products and

1   services, and that Defendants may be subject to class claims arising from those

2   products and services.

3   **JURISDICTION AND VENUE**

4       9.      This Court has jurisdiction over all causes of action asserted herein

5   pursuant to 28 U.S.C. § 1332(a), on the ground that the matter in controversy

6   exceeds the sum or value of $75,000 and is between citizens of different states.

7       10.     Venue is proper in the Central District of California pursuant to 28

8   U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving

9   rise to Plaintiff's claims occurred and/or was known or intended by Defendants to

10  occur in or have consequences in this District, and a substantial part of the property

11  that is the subject of the action is situated in this District.

12

13  **PARTIES**

14      11.     Plaintiff Second Street Corporation is a corporation incorporated in

15  the State of California with its principal place of business in Santa Monica,

16  California.  Plaintiff does business as the Huntley Hotel Santa Monica Beach,

17  operating a hotel under the same name (the "Huntley Hotel").

18      12.     Defendant EI is a corporation incorporated in the State of Ohio, with

19  its principal place of business in Westerville, Ohio.  Plaintiff is informed and

20  believes, and on that basis alleges, that, in or around July 2015, EI's parent

21  company purchased Quadriga Worldwide Ltd. and its subsidiaries, including

22  Quadriga Americas ("Quadriga").  Plaintiff is informed and believes, and on that

23  basis alleges, that EI succeeded to all contracts, obligations, debts, and liabilities of

24  Quadriga discussed herein, including the Huntley-Quadriga Agreement and its

25  obligation to provide the Quadriga Services, defined and discussed below.

26  Plaintiff is informed and believes, and on that basis alleges, that EI does business

27  in California but is not registered with the California Secretary of State to conduct

28  business in California.

Mitchell
Silberberg &
Knupp LLP

7926760.3

4

COMPLAINT

13.     The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants sued herein as Does 1 through 3, inclusive, are unknown to Plaintiff, which sues said defendants by such fictitious names (the "EI Doe Defendants").  Plaintiff is informed and believes, and on that basis alleges, that each EI Doe Defendant participated in some or all of the alleged conduct by EI as alleged herein, and is liable to Plaintiff for the damages and other relief to which Plaintiff is entitled from EI.  If necessary, Plaintiff will seek leave to amend this Complaint to state the true names and capacities of the EI Doe Defendants.  As used herein, the term "EI Defendants" refers, individually and collectively, to EI and the EI Doe Defendants.

14.     Defendant LG is a corporation incorporated in Delaware with its principal place of business in New Jersey.

15.     The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants sued herein as Does 4 through 6, inclusive, are unknown to Plaintiff, which sues said defendants by such fictitious names (the "LG Doe Defendants").  Plaintiff is informed and believes, and on that basis alleges, that each LG Doe Defendant participated in some or all of the alleged conduct by LG as alleged herein, and is liable to Plaintiff for the damages and other relief to which Plaintiff is entitled from LG.  If necessary, Plaintiff will seek leave to amend this Complaint to state the true names and capacities of the LG Doe Defendants.  As used herein, the term "LG Defendants" refers, individually and collectively, to LG and the LG Doe Defendants.

16.     As used herein, the term "Defendants" refers, individually and collectively, to the EI Defendants and the LG Defendants.

17.     Plaintiff is informed and believes, and on that basis alleges, that the defects and failures of the Quadriga Services and LG Televisions, as defined and described herein, are common to multiple purchasers of those products and services and that the EI Defendants and LG Defendants, respectively, have

received multiple complaints from other purchasers and users of those products and services regarding the same and/or similar defects and failures described herein.  Plaintiff reserves the right to amend this Complaint to add class allegations and thereafter to seek certification of this action as a class action against some or all of Defendants.

## STATEMENT OF FACTS

### The Huntley Hotel, In-Room Entertainment, and Interactive Entertainment Systems

18.     Plaintiff owns and operates the Huntley Hotel, a world-class, "four star" luxury hotel with approximately 204 rooms, just two blocks from the beach, a few blocks north of the Santa Monica Pier.  The Penthouse restaurant on the top floor of the hotel features 360° views and fine dining in a hip setting.  The Huntley Hotel is advertised as a luxurious and glamorous hotel, with top-shelf amenities, and charges rates commensurate with such luxury.

19.     In order to maintain the Huntley Hotel's status and profitability, it is critical to Plaintiff that in-room amenities be of the highest quality.  Customers who stay at luxury hotels such as the Huntley Hotel demand the highest quality amenities, and any lack of quality has a significant detrimental effect on such hotels' reputation and their ability to attract guests and charge top-shelf rates, and thus their profitability.

20.     In particular, guests at luxury hotels such as the Huntley Hotel demand top quality in-room entertainment provided through television screens, including cable television channels, premium television channels, on-demand movies, video games, and other audiovisual services (collectively, "In-Room Entertainment").

21.     In-Room Entertainment is provided at most modern hotels, including the Huntley Hotel, through a combination of IPTVs and various other technologies

that provide various types of content, billing services, and other interactive services such as "guest portals" or menus for choosing various In-Room Entertainment options (collectively, the "Interactive Entertainment System(s)").

22.     Various elements of Interactive Entertainment Systems at luxury hotels such as the Huntley Hotel are provided by different vendors.  For example, one vendor may provide IPTVs, another vendor may provide certain content, while another vendor may provide billing and other interactive services.

**The LG Defendants Provide IPTVs, Encryption/Decryption Services, and Set-Top Boxes to Plaintiff**

23.     In or around July 2014, Plaintiff's representative contacted a representative of LG to inquire about purchasing IPTVs for use as part of the Huntley Hotel's in-room Interactive Entertainment System.  Plaintiff's representative informed LG's representative, including in writing, of the purpose of the purchase and the intended use of LG's IPTVs.

24.     As part of the parties' discussions, Plaintiff relied on the LG Defendants' skill and judgment to ensure that the IPTVs to be purchased were suitable for use as part of the Interactive Entertainment System for In-Room Entertainment at the Huntley Hotel.

25.     Plaintiff and LG ultimately reached an agreement for Plaintiff to purchase from LG model 60LY970H IPTVs (the "LG Televisions") for use as part of the Interactive Entertainment System for In-Room Entertainment for the Huntley Hotel.  Plaintiff and LG agreed that their agreement would be consummated through the issuance of various purchase orders by Plaintiff, for the purchase of the LG Televisions at the agreed-upon price.  (The agreement described in this paragraph between Plaintiff and LG is referred to herein as the "Huntley-LG Agreement").

Silberberg &
Knupp LLP

7926760.3

7

COMPLAINT

26.     The LG Televisions are advertised as containing "integrated Pro:Idiom" technology (the "Integrated Pro:Idiom Technology").  Pro:Idiom is a trademarked encryption and decryption technology developed by LG for use in the hospitality industry for the secure delivery of high-definition digital In-Room Entertainment.  Because the high-definition In-Room Entertainment content used in most modern hotels, including the Huntley Hotel, is 100% digital, that digital content is easily pirated if the signal is not encrypted.  To attempt to prevent such piracy, many content providers require hotels and other hospitality providers to encrypt – and subsequently decrypt before or as part of playback – the In-Room Entertainment delivered to their Interactive Entertainment Systems.

27.     The Integrated Pro:Idiom Technology is "integrated" in the LG Televisions in that, unlike other encryption/decryption systems, no external device is necessary to decrypt In-Room Entertainment content coming into the LG Televisions.  Instead, the Integrated Pro:Idiom Technology is contained within the LG Televisions themselves.

28.     As part of the discussions between Plaintiff and the LG Defendants regarding the potential purchase of the LG Televisions, Plaintiff relied on the LG Defendants' skill and judgment to ensure that the Integrated Pro:Idiom Technology contained within LG Televisions was an appropriate and compatible encryption and decryption technology for use as part of Plaintiff's Interactive Entertainment System.

29.     As used hereinafter, the term "LG Televisions" refers collectively to the IPTVs purchased by Plaintiff, together with the Integrated Pro:Idiom Technology contained therein.

30.     During the parties' negotiation and in connection with Plaintiff's purchase of the LG Televisions, the LG Defendants provided to Plaintiff certain written materials, which contained express warranties regarding the LG Televisions.  These materials warranted, *inter alia*, that the LG Televisions were

suitable for use as part of hotels' Interactive Entertainment Systems, that the LG Televisions produced sufficient image quality, that the LG Televisions were compatible with the Quadriga Services (as defined below), and that the LG Televisions would function without material defect during the three-year warranty period (collectively, the "LG Warranty").  These statements of fact and promises formed part of the basis of the bargain of Plaintiff's agreement, in the Huntley-LG Agreement, to purchase the LG Televisions.  The materials containing the LG Warranty are attached hereto as **Exhibit A**.

31.     Pursuant to the Huntley-LG Agreement, Plaintiff issued a total of four purchase orders to the LG Defendants, from November 2014 to April 2015, for the purchase of 146 total LG Televisions.  LG issued invoices to Plaintiff for each of these purchase orders, each of which Plaintiff paid, and the LG Defendants distributed the LG Televisions to Plaintiff.

32.     In July and August 2015, pursuant to the Huntley-LG Agreement, Plaintiff issued three more purchase orders to the LG Defendants, for the purchase of 16 total additional LG Televisions.  LG again issued invoices to Plaintiff for each of these purchase orders, each of which Plaintiff paid, and the LG Defendants distributed the LG Televisions to Plaintiff.

33.     In April 2016, Plaintiff also purchased one model 55UX970H television – the 55" version of the same model line as the 60LY970H – from LG. (That television is included in the definition of "LG Televisions" herein.)

34.     Each of the invoices issued by LG for the purchase of the LG Televisions described the televisions as "Commercial(Hotel)_LED LCD TV[s]".

35.     Plaintiff paid a total of $244,963.46 for the LG Televisions.

36.     In January and May 2015, Plaintiff also purchased from LG 67 units referred to as set-top boxes (the "Set-Top Boxes"), which were to function temporarily as part of Plaintiff's Interactive Entertainment System, with LG televisions previously purchased by Plaintiff, while other elements of the

Interactive Entertainment System were being upgraded.  Plaintiff paid $9,290.63 to LG for the Set-Top Boxes.

**The EI Defendants Provide the Quadriga Services to Plaintiff**

37.    In or around June 2014, a representative of Quadriga contacted Plaintiff's representative to inquire about Quadriga providing certain elements of Plaintiff's Interactive Entertainment System for the Huntley Hotel, including all In-Room Entertainment content, billing services, and other interactive services such as "guest portals" or menus, and related equipment for the delivery thereof, referred to by Quadriga as a Sensiq$^{TM}$ System (collectively, the "Quadriga Services").

38.    Plaintiff's representative informed Quadriga's representative, including in writing, of the purpose of the purchase and the intended use of the Quadriga Services.  As part of the parties' discussions, Plaintiff relied on the EI Defendants' skill and judgment to ensure that the particular services to be included in the Quadriga Services were suitable for use as part of the Interactive Entertainment System for In-Room Entertainment at the Huntley Hotel.

39.    Plaintiff and Quadriga ultimately entered into a written agreement for Plaintiff to purchase Quadriga Services from Quadriga for use as part of the Interactive Entertainment System for In-Room Entertainment at the Huntley Hotel. Plaintiff and Quadriga agreed to pay $38,924 to Quadriga, in two installments, as well as $2 per room per month, as long as Plaintiff continued to use the Quadriga Services, and 60% of all amounts received by Plaintiff for video-on-demand services.  (The agreement described in this paragraph between Plaintiff and Quadriga is referred to herein as the "Huntley-Quadriga Agreement").  Plaintiff paid the first $19,462 installment to Quadriga, but has not paid the second installment, based on the TV System Failures described herein.

40.     The Huntley-Quadriga Agreement contained certain express warranties regarding the Quadriga Services.  Quadriga fully warranted all equipment components provided as part of the Quadriga Services for the full five-year initial term of the Huntley-Quadriga Agreement.  Quadriga warranted that all faulty or failed equipment components would be repaired or replaced at no charge to Plaintiff, including shipping, during the five-year Quadriga Warranty period.  Quadriga also fully warranted its labor during the five-year initial term of the Huntley-Quadriga Agreement, and all renewal terms thereof.  Quadriga further agreed and represented that it would "maintain a signal of a quality generally accepted in the hospitality industry" for the Quadriga Services and that it would provide 24-hours per day, 365 days per year "proactive remote monitoring" of the Quadriga Services and would "use all reasonable endeavors to resolve problems identified by such monitoring."  The foregoing warranties described in this paragraph are referred to herein collectively as the "Quadriga Warranty."  These statements of fact and promises formed part of the basis of the bargain of Plaintiff's agreement, in the Huntley-Quadriga Agreement, to pay for use of the Quadriga Services.

41.     To date, Plaintiff has paid a total of at least $40,184.17 for the Quadriga Services.

**Plaintiff's Interactive Entertainment System Fails to Operate Sufficiently**

42.     Soon after Plaintiff first purchased and installed the Quadriga Services and LG Televisions, Plaintiff began receiving repeated complaints from Huntley Hotel customers regarding the unacceptably poor quality of the In-Room Entertainment displayed on Plaintiff's Interactive Entertainment System.  These complaints continue to the date of the filing of this complaint.

43.     Just in the nine months prior to filing this action (which omits prior customer complaints), Plaintiff has logged well over 400 guest complaints, from

numerous different rooms, describing various problems with the In-Room Entertainment displayed on Plaintiff's Interactive Entertainment System, including but not limited to the following:

- "Pixelation" of the images displayed, in which the image is distorted and individual pixels on the display freeze, change color, and/or distort, such that the smooth flow of the displayed images is disrupted;
- "Blurry" or "fuzzy" images;
- Frozen or "stuck" images;
- Television channels "scattering";
- Television stuck on language channel;
- Display of only black images;
- "Rebooting" (*i.e.*, resetting) of the Interactive Entertainment System, whereby the content being displayed stops, the screen goes blank, the LG logo then appears, and the Interactive Entertainment System resets itself (like a computer rebooting).

44.     As a result of the foregoing problems, and to attempt to remedy the same, Plaintiff repeatedly has been forced to manually reboot (*i.e.*, reset) the Interactive Entertainment System, causing further disruption in the playback of In-Room Entertainment content to customers.

45.     As a result of the foregoing problems, Plaintiff has experimented with disabling the Quadriga Services and resetting the LG Televisions to factory default settings to display only free-to-guest channels.  This has resulted in the Interactive Entertainment System continually rebooting.

46.     As described in further detail below, customers of the Huntley Hotel also began posting negative reviews and comments on prominent review websites such as TripAdvisor.com and Yelp.com, noting the various failures and issues they experienced with the hotel's Interactive Entertainment System.

Mitchell
Silberberg &
Knupp LLP

7926760.3

47.    Plaintiff promptly investigated the customers' complaints.  Plaintiff discovered that, as stated in customers' complaints, the In-Room Entertainment displayed on the Interactive Entertainment System in the rooms Plaintiff tested suffered from pixelation.  The following are three screen-shots from videos taken by Plaintiff's representative of In-Room Entertainment displayed on the Interactive Entertainment System in one room at the Huntley Hotel, demonstrating such pixelation:



COMPLAINT

Mitchell
Silberberg &
Knupp LLP

7926760.3



48.    Plaintiff also discovered that, as stated in customers' complaints, the In-Room Entertainment displayed on the Interactive Entertainment System in the rooms Plaintiff tested suffered from repeated freezing and rebooting.  The following are screen-shots from a video taken by Plaintiff's representative of In-Room Entertainment displayed on the Interactive Entertainment System in one room at the Huntley Hotel, demonstrating such involuntary resetting:



Fig. 1 – Video displayed

Mitchell Silberberg & Knupp LLP

7926760.3



Fig. 2 – Next Frame: black screen



Fig. 3 – Next Frame: LG logo for rebooting

1
2
3
4
5
6
7
8
9
10
11
12
13



14

Fig. 4 – Subsequent video

15
16
17
18
19
20
21
22
23
24
25
26



27

Fig. 5 – Next Frame: black screen again

28



Fig. 6 – Next Frame: LG logo for another rebooting

49.     Plaintiff also discovered that, as stated in customers' complaints, the In-Room Entertainment displayed on the Interactive Entertainment System in the rooms Plaintiff tested suffered from "freezing," where images on the screen would cease moving temporarily.

50.     The problems described in the customer complaints regarding Plaintiff's Interactive Entertainment System and the issues discovered by Plaintiff, as discussed in paragraphs 42 through 49 above, are referred to herein, individually and collectively, as the "TV System Failures."

51.     The TV System Failures have occurred (and continue to occur) on both the LG Televisions purchased pursuant to the Huntley-LG Agreement and on older LG televisions previously purchased by Plaintiff, on which the Set-Top Boxes are being used.  Quadriga Services are provided for both the newly-purchased LG Televisions and the older televisions with which the Set-Top Boxes are being used.

52.    Promptly upon learning of the TV System Failures, Plaintiff informed Defendants regarding the TV System Failures.  Plaintiff requested that Defendants remedy the TV System Failures.  However, the TV System Failures have not been resolved, and in fact have escalated.  Currently, the Interactive Entertainment System in virtually every room at the Huntley Hotel is experiencing frequent and repeated TV System Failures of various kinds.

53.    To date, neither Plaintiff nor any Defendant has been able to confirm the source of the TV System Failures.  However, Plaintiff has confirmed that the content feed into Plaintiff's property, when tested without the Quadriga Services or the LG Televisions, is not experiencing TV System Failures.  Therefore, Plaintiff is informed and believes, and on that basis alleges, that the TV System Failures have been proximately caused by the LG Defendants (*i.e.*, by the LG Televisions) and by the EI Defendants (*i.e.*, by the Quadriga Services), as described herein.

54.    Plaintiff is informed and believes, and on that basis alleges, that other purchasers of the Quadriga Services and of the LG Televisions, including those with Integrated Pro:Idiom Technology, have experienced similar TV System Failures as a proximate result of the Quadriga Services and the LG Televisions, and that the EI Defendants and LG Defendants, respectively, have received multiple complaints from other purchasers and users of those products regarding the same and/or similar defects and TV System Failures described herein.

55.    In addition, to date the EI Defendants have failed to deliver all of the Quadriga Services promised in the Huntley-Quadriga Agreement, including, but not limited to, express checkout, in-room bill viewing, mobile application, Internet on TV, and world radio features.

## Plaintiff's Damages

56.    Plaintiff paid $244,963.46 to LG for 163 LG Televisions. Plaintiff paid $9,290.63 to LG for 67 Set-Top Boxes.  Because of the TV System Failures

1  described herein, and because the LG Televisions are not suitable for the purpose

2  for which they were purchased, the actual value of the LG Televisions and the Set-

3  Top Boxes is zero.  Thus, as a proximate result of the TV System Failures alleged

4  herein, Plaintiff has been damaged in the full amount of $254,254.09 paid to LG

5  for the LG Televisions and Set-Top Boxes.

6      57.    Plaintiff paid a lump sum of $19,462, as well as monthly payments of

7  $2 per room and various payments for in-room video-on-demand entertainment

8  ordered by customers, to Quadriga/EI for the Quadriga Services.  Because of the

9  TV System Failures described herein, and because the Quadriga Services are not

10 suitable for the purpose for which they were purchased, the actual value of the

11 Quadriga Services is zero.  Thus, as a proximate result of the TV System Failures

12 alleged herein, Plaintiff has been damaged in the amount of at least $40,184.17 it

13 has paid for the Quadriga Services.

14     58.    As a proximate result of the TV System Failures alleged herein,

15 Plaintiff has been forced to give refunds to customers at the Huntley Hotel in an

16 amount to be proven at trial, but believed to be no less than $15,469.20.

17     59.    As a proximate result of the TV System Failures alleged herein,

18 customers of the Huntley Hotel have refrained from purchasing In-Room

19 Entertainment from Plaintiff, both because such customers personally have

20 experienced past TV System Failures and because such customers have been

21 informed of TV System Failures experienced by other customers.  In or around

22 June 2016, Plaintiff was forced to completely disable all video-on-demand services

23 at the Huntley Hotel due to Defendants' inability to satisfactorily provide such

24 services.  Plaintiff receives approximately forty percent (40%) of the revenue from

25 each purchase of video-on-demand services at the Huntley Hotel.  Thus, Plaintiff

26 has been damaged by the loss of purchases of video-on-demand services by

27 Huntley Hotel customers, in an amount to be determined at trial.

28

60.    As a proximate result of the TV System Failures alleged herein, Plaintiff has suffered a loss of reputation.  For example, since the beginning of 2015, after Plaintiff purchased and began installing the Quadriga Services and the LG Televisions, customers have left the following reviews on the prominent review website TripAdvisor.com:

- "The TV service is about the worst I've ever had in a hotel, here or abroad."
- "TV reception is terrible, so come here thinking you will not watch any TV."
- "The TV would lose reception with the image pixellating for minutes at a time making watching TV a frustrating exercise."
- "[T]he TV had a poor connection only to get a picture every few minutes."
- "[T]he tv is modern but the signal goes out" (translated from Spanish).
- "We tried to put on our TV and it wasn't working."
- "The TV didn't work, apparently they just installed a new system, but … the screen reminded me of the very first color TVs that came ou[t] a long time ago, blurry with off colors etc."

Similarly, recent reviews on the website Yelp.com state:

- "[TV] stopped working[.]"
- "The cable/dish service went out a couple times and we had to call the front desk to have them reboot the system."

61.    These reviews, and other similar reviews on these and other websites and in other media, as well as negative word of mouth, have caused Plaintiff to lose customers, and have otherwise harmed Plaintiff in an amount to be determined at trial.

62.    Because Defendants were unwilling and/or unable to remedy the TV System Failures, and as a proximate result thereof, Plaintiff was forced to hire an

Mitchell
Silberberg &
Knupp LLP

7926760.3

20

COMPLAINT

1  independent consultant specializing in Interactive Entertainment Systems (the

2  "Consultant") to troubleshoot and attempt to fix the TV System Failures.  Plaintiff

3  has paid its Consultant at least $39,150.00, which constitutes additional damages

4  proximately caused by Defendants.

5       63.    Plaintiff is informed and believes, and on that basis alleges, that

6  Plaintiff's damages, as described herein, far exceed the minimum jurisdiction of

7  this Court.

8

9  **FIRST CAUSE OF ACTION**

10  **(Breach of Express Warranty – Against the EI Defendants)**

11       64.    Plaintiff incorporates the allegations of paragraphs 1-63 above.

12       65.    The EI Defendants made statements of fact and promises, received by

13  Plaintiff, that the Quadriga Services were suitable for use as part of the Interactive

14  Entertainment System in Plaintiff's hotel, that the Quadriga Services were of

15  sufficient quality, that the Quadriga Services were compatible with the LG

16  Televisions, and that the Quadriga Services would function without material defect

17  for five years after installation.  These statements of fact and promises formed part

18  of the basis of the bargain of Plaintiff's agreement to purchase the Quadriga

19  Services.

20       66.    The Quadriga Services did not perform as promised and did not meet

21  the quality of the EI Defendants' statements.  Within the five-year Quadriga

22  Warranty period, the Quadriga Services have experienced material defects, which

23  the EI Defendants have failed to resolve.

24       67.    Plaintiff took reasonable steps to notify the EI Defendants within a

25  reasonable time after discovering the defects in the Quadriga Services that the

26  Quadriga Services were not as represented, did not perform as promised, and

27  experienced material defects.  Plaintiff is informed and believes, and on that basis

28  alleges, that the EI Defendants received such notices.

Mitchell
Silberberg &
Knupp LLP

7926760.3

68.     Plaintiff was harmed by the failure of the Quadriga Services to perform as promised, their failure to meet the quality of the EI Defendants' representations, and their material defects, in the manner described herein.

69.     The failure of the Quadriga Services to perform as promised, their failure to meet the quality of the EI Defendants' representations, and their material defects were substantial factors in causing Plaintiff's harm.

70.     The Quadriga Services cannot, after a reasonable number of attempts at repair, be repaired to make them as warranted by the EI Defendants. Accordingly, Plaintiff is entitled to restitution or replacement of the Quadriga Services at its election.

## SECOND CAUSE OF ACTION

### (Breach of Express Warranty – Against the LG Defendants)

71.     Plaintiff incorporates the allegations of paragraphs 1-63 above.

72.     The LG Defendants made statements of fact and promises, received by Plaintiff, that the LG Televisions were suitable for use as hotel televisions, that the LG Televisions were of sufficient quality, that the LG Televisions are compatible with Quadriga Services, and that the LG Televisions would function without material defect during their three-year LG Warranty period.  These statements of fact and promises formed part of the basis of the bargain of Plaintiff's agreement to purchase the LG Televisions.

73.     The LG Televisions did not perform as promised and did not meet the quality of the LG Defendants' statements.  Within the three-year Warranty Period, the LG Televisions have experienced material defects, which the LG Defendants have failed to resolve.

74.     Plaintiff took reasonable steps to notify the LG Defendants within a reasonable time after discovering the defects in the LG Televisions that the LG Televisions were not as represented, did not perform as promised, and experienced

1    material defects.  Plaintiff is informed and believes, and on that basis alleges, that

2    the LG Defendants received such notices.

3           75.      Plaintiff was harmed by the failure of the LG Televisions to perform

4    as promised, their failure to meet the quality of the LG Defendants'

5    representations, and their material defects, in the manner described herein.

6           76.      The failure of the LG Televisions to perform as promised, their failure

7    to meet the quality of the LG Defendants' representations, and their material

8    defects were substantial factors in causing Plaintiff's harm.

9           77.      The LG Televisions cannot, after a reasonable number of attempts at

10    repair, be repaired to make them as warranted by the LG Defendants.

11    Accordingly, Plaintiff is entitled to restitution or replacement of the LG

12    Televisions at its election.

13

14                            **THIRD CAUSE OF ACTION**

15              **(Breach Of Contract – Against The EI Defendants)**

16           78.      Plaintiff incorporates the allegations of paragraphs 1-63 above.

17           79.      Plaintiff and the EI Defendants entered into the Huntley-Quadriga

18    Agreement for the purchase by Plaintiff of the Quadriga Services.  The Quadriga

19    Warranty was a material term of the Huntley-Quadriga Agreement.

20           80.      Plaintiff duly performed all conditions, covenants, and promises on its

21    part to be performed under the Huntley-Quadriga Agreement, except as excused or

22    rendered impossible by the EI Defendants' acts and omissions as alleged herein.

23           81.      The EI Defendants breached their contractual obligations to Plaintiff

24    under the Huntley-Quadriga Agreement by failing to adequately repair the

25    Quadriga Services to fully functioning working order within the five-year

26    Quadriga Warranty period, by failing to maintain a signal of a quality generally

27    accepted in the hospitality industry for the Quadriga Services, by failing to provide

28    24 hours per day, 365 days per year proactive remote monitoring of the Quadriga

Services, and by failing to use all reasonable endeavors to resolve all problems identified by such monitoring.

82. The EI Defendants also breached their contractual obligations to Plaintiff under the Huntley-Quadriga Agreement by failing to deliver all of the Quadriga Services promised in the Huntley-Quadriga Agreement, including, but not limited to, express checkout, in-room bill viewing, mobile application, Internet on TV, and world radio features.

83. As a direct and proximate result of the foregoing acts and omissions of the EI Defendants, and by reason of their breaches of their warranty obligations under the Huntley-Quadriga Agreement, Plaintiff has sustained damages, in the manner described herein and in an amount to be ascertained at trial.

## **FOURTH CAUSE OF ACTION**

### **(Breach Of Contract – Against The LG Defendants)**

84. Plaintiff incorporates the allegations of paragraphs 1-63 above.

85. Plaintiff and the LG Defendants entered into the Huntley-LG Agreement for the purchase by Plaintiff of the LG Televisions and Set-Top Boxes. The LG Warranty was a material term of the Huntley-LG Agreement.

86. Plaintiff duly performed all conditions, covenants, and promises on its part to be performed under the Huntley-LG Agreement, except as excused or rendered impossible by the LG Defendants' acts and omissions as alleged herein.

87. The LG Defendants breached their contractual obligations to Plaintiff under the Huntley-LG Agreement by failing to adequately repair the LG Televisions to fully functioning working order within the three-year LG Warranty period, by failing to provide IPTVs and Set-Top Boxes that are suitable for use as part of Plaintiff's Interactive Entertainment System, by failing to provide IPTVs and Set-Top Boxes that produce sufficient image quality, by failing to provide IPTVs and Set-Top Boxes that are compatible with the Quadriga Services, and by

failing to provide IPTVs and Set-Top Boxes that function without material defect during the three-year warranty period.

88.     As a direct and proximate result of the foregoing acts and omissions of the LG Defendants, and by reason of their breaches of their warranty obligations under the Huntley-LG Agreement, Plaintiff has sustained damages, in the manner described herein and in an amount to be ascertained at trial.

## FIFTH CAUSE OF ACTION

### (Restitution After Rescission – Against the EI Defendants)

89.     Plaintiff incorporates the allegations of paragraphs 1-63 above.

90.     Plaintiff and the EI Defendants entered into the Huntley-Quadriga Agreement for the purchase by Plaintiff of the Quadriga Services.

91.     Plaintiff duly performed all conditions, covenants, and promises on its part to be performed under the Huntley-Quadriga Agreement, except as excused or rendered impossible by the EI Defendants' acts and omissions as alleged herein.

92.     Plaintiff paid at least $40,184.17 to the EI Defendants under the Huntley-Quadriga Agreement, in consideration for Quadriga Services that were suitable for use with the LG Televisions as part of the Interactive Entertainment System at the Huntley Hotel, that were of sufficient quality, that were compatible with the LG Televisions, and that would function without material defect during the five-year Quadriga Warranty period.

93.     Because the Quadriga Services were not suitable for use with the LG Televisions as part of the Interactive Entertainment System at the Huntley Hotel, were not of sufficient quality, were not compatible with the LG Televisions, and did not function without material defect during the five-year Quadriga Warranty period, there was a material failure of consideration for the Huntley-Quadriga Agreement.

94.     Plaintiff, at its election, may elect to rescind the Huntley-Quadriga Agreement and obtain restitution of all amounts paid to the EI Defendants under the Huntley-Quadriga Agreement.  In return, Plaintiff will return all consideration it received under the Huntley-Quadriga Agreement, including all physical components of the Quadriga Services.

## SIXTH CAUSE OF ACTION

### (Restitution After Rescission – Against the LG Defendants)

95.     Plaintiff incorporates the allegations of paragraphs 1-63 above.

96.     Plaintiff and the LG Defendants entered into the Huntley-LG Agreement for the purchase by Plaintiff of the LG Televisions.

97.     Plaintiff duly performed all conditions, covenants, and promises on its part to be performed under the Huntley-LG Agreement, except as excused or rendered impossible by the LG Defendants' acts and omissions as alleged herein.

98.     Plaintiff paid at least $254,254.09 to the LG Defendants under the Huntley-LG Agreement, in consideration for 163 LG Televisions and 63 Set-Top Boxes that were suitable for use as part of the Interactive Entertainment System for In-Room Entertainment at the Huntley Hotel, that were of sufficient quality, that were compatible with the Quadriga Services, and that would function without material defect during the three-year LG Warranty period.

99.     Because the LG Televisions and Set-Top Boxes were not suitable for use as part of the Interactive Entertainment System for In-Room Entertainment at the Huntley Hotel, were not of sufficient quality, were not compatible with the Quadriga Services, and did not function without material defect during the three-year LG Warranty period, there was a material failure of consideration for the Huntley-LG Agreement.

100.   Plaintiff, at its election, may elect to rescind the Huntley-LG Agreement and obtain restitution of all amounts paid to the LG Defendants under

Mitchell
Silberberg &
Knupp LLP

7926760.3

the Huntley-LG Agreement.  In return, Plaintiff will return all consideration it received under the Huntley-LG Agreement, including all of the LG Televisions and the Set-Top Boxes.

## SEVENTH CAUSE OF ACTION

### (Negligence – Against the EI Defendants)

101.   Plaintiff incorporates the allegations of paragraphs 1-63 above.

102.   The EI Defendants designed, manufactured, and supplied to Plaintiff the Quadriga Services.

103.   In designing, manufacturing, and supplying to Plaintiff the Quadriga Services, the EI Defendants failed to use the amount of care that a reasonably careful designer, manufacturer, and supplier would use in similar circumstances to avoid exposing others to a foreseeable risk of damages from the deficient Quadriga Services.  Plaintiff is informed and believes, and on that basis alleges, that the EI Defendants knew or should have known about the likelihood and severity of potential damages Plaintiff would suffer from the deficient Quadriga Services.

104.   Plaintiff has been damaged, in the manner described herein and in an amount to be proven at trial.  The EI Defendants' negligence was a substantial factor in causing and contributed substantially to Plaintiff's damages.

## EIGHTH CAUSE OF ACTION

### (Negligence – Against the LG Defendants)

105.   Plaintiff incorporates the allegations of paragraphs 1-63 above.

106.   The LG Defendants designed, manufactured, and supplied to Plaintiff the LG Televisions.

107.   In designing, manufacturing, and supplying to Plaintiff the LG Televisions, the LG Defendants failed to use the amount of care that a reasonably careful designer, manufacturer, and supplier would use in similar circumstances to avoid exposing others to a foreseeable risk of damages from the deficient LG

Televisions.  Plaintiff is informed and believes, and on that basis alleges, that the LG Defendants knew or should have known about the likelihood and severity of potential damages Plaintiff would suffer from the deficient LG Televisions.

108.   Plaintiff has been damaged, in the manner described herein and in an amount to be proven at trial.  The LG Defendants' negligence was a substantial factor in causing and contributed substantially to Plaintiff's damages.

## NINTH CAUSE OF ACTION

**(Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* – Against the EI Defendants)**

109.   Plaintiff incorporates the allegations of paragraphs 1-63 above.

110.   The acts and practices engaged in by the EI Defendants, as described herein, constitute unlawful and/or unfair business practices in that:

      A.    the EI Defendants marketed the Quadriga Services as suitable for use as part of hotels' Interactive Entertainment Systems, when they are not suitable for that purpose;

      B.    the EI Defendants marketed the Quadriga Services as compatible with the LG Televisions, when they are not; and

      C.    the EI Defendants represented that the Quadriga Services are suitable for use with the LG Televisions as part of the Interactive Entertainment System for In-Room Entertainment for the Huntley Hotel, when the Quadriga Services are not suitable for that purpose.

111.   Any justification for the EI Defendants' conduct is outweighed by the gravity of the consequences to Plaintiff and other purchasers of the Quadriga Services.

112.   The EI Defendants' conduct is unlawful, immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to Plaintiff and other purchasers of the Quadriga Services.

113.   Plaintiff has suffered harm as a result of the EI Defendants' actions because, without limitation, Plaintiff was misled into believing that it was purchasing services that were consistent with the EI Defendants' representations. Plaintiff has suffered injury in fact and has lost money or property as a result of the EI Defendants' unfair competition, in the manner alleged herein.

114.   By reason of the EI Defendants' violation of Cal. Bus. & Prof. Code § 17200 *et seq.*, Plaintiff is entitled to recover restitution, injunctive relief, and such other relief as provided by law.  Plaintiff has no adequate remedy at law.

### TENTH CAUSE OF ACTION

**(Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* – Against the LG Defendants)**

115.   Plaintiff incorporates the allegations of paragraphs 1-63 above.

116.   The acts and practices engaged in by the LG Defendants, as described herein, constitute unlawful and/or unfair business practices in that:

      A.    the LG Defendants marketed the LG Televisions, including but not limited to the Integrated Pro:Idiom Technology therein, as "hospitality televisions" suitable for use as hotel IPTVs, when they are not suitable for that purpose;

      B.    the LG Defendants represented that the LG Televisions, including but not limited to the Integrated Pro:Idiom Technology therein, are suitable for use as part of the Interactive Entertainment System for In-Room Entertainment for the Huntley Hotel, when the LG Televisions are not suitable for that purpose; and

C.    the LG Defendants marketed the LG Televisions, including but not limited to the Integrated Pro:Idiom Technology therein, as compatible with the Quadriga Services, when they are not.

117.   Any justification for the LG Defendants' conduct is outweighed by the gravity of the consequences to Plaintiff and other purchasers of the LG Televisions.

118.   The LG Defendants' conduct is unlawful, immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to Plaintiff and other purchasers of the LG Televisions.

119.   Plaintiff has suffered harm as a result of the LG Defendants' actions because, without limitation, Plaintiff was misled into believing that it was buying IPTVs and Integrated Pro:Idiom Technology that was consistent with the LG Defendants' representations.  Plaintiff has suffered injury in fact and has lost money or property as a result of the LG Defendants' unfair competition, in the manner alleged herein.

120.   By reason of the LG Defendants' violation of Cal. Bus. & Prof. Code § 17200 *et seq.*, Plaintiff is entitled to recover restitution, injunctive relief, and such other relief as provided by law.  Plaintiff has no adequate remedy at law.

## **ELEVENTH CAUSE OF ACTION**

### **(Negligent Misrepresentation – Against The EI Defendants)**

121.   Plaintiff incorporates the allegations of paragraphs 1-63 and 65-70 above.

122.   The EI Defendants made the misrepresentations alleged herein. Plaintiff is informed and believes, and on that basis alleges that, at the time the EI Defendants made the misrepresentations alleged herein, they had no reasonable basis for believing those representations to be true.

123.   The EI Defendants made the misrepresentations alleged herein for the purpose of inducing Plaintiff to purchase the Quadriga Services.

124.   Plaintiff actually and justifiably relied on the EI Defendants' misrepresentations as alleged herein in entering into the Huntley-Quadriga Agreement, submitting the various purchase orders under that contract, and paying for the Quadriga Services.

125.   As a result of the EI Defendants' negligent misrepresentations, Plaintiff has sustained damages as alleged herein, and in an amount to be proven at trial.

## TWELFTH CAUSE OF ACTION

### (Negligent Misrepresentation – Against The LG Defendants)

126.   Plaintiff incorporates the allegations of paragraphs 1-63 and 72-77 above.

127.   The LG Defendants made the important misrepresentations alleged herein.  Plaintiff is informed and believes, and on that basis alleges that, at the time the LG Defendants made the misrepresentations alleged herein, they had no reasonable basis for believing those representations to be true.

128.   The LG Defendants made the misrepresentations alleged herein for the purpose of inducing Plaintiff to purchase the LG Televisions.

129.   Plaintiff actually and justifiably relied on the LG Defendants' misrepresentations as alleged herein in entering into the Huntley-LG Agreement, submitting the various purchase orders under that contract, and paying for the LG Televisions and Set-Top Boxes.

130.   As a result of the LG Defendants' negligent misrepresentations, Plaintiff has sustained damages as alleged herein, and in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court enter judgment in its favor on each and every claim for relief set forth above, and for relief as follows:

1.      An order declaring that the Huntley-Quadriga Agreement is rescinded and ordering restitution of all consideration granted under the Huntley-Quadriga Agreement;

2.      An order declaring that the Huntley-LG Agreement is rescinded and ordering restitution of all consideration granted under the Huntley-LG Agreement or any purchase order fulfilled thereunder;

3.      A preliminary and permanent injunction enjoining the EI Defendants, their officers, employees, agents, subsidiaries, representatives, distributors, dealers, members, affiliates, and all persons acting in concert or participation with them from: (a) marketing the Quadriga Services as suitable for use as part of hotels' Interactive Entertainment Systems for In-Room Entertainment, (b) representing that the Quadriga Services are suitable for use with the LG Televisions as part of hotels' Interactive Entertainment Systems for In-Room Entertainment, or (c) marketing the Quadriga Services as compatible with the LG Televisions.

4.      A preliminary and permanent injunction enjoining the LG Defendants, their officers, employees, agents, subsidiaries, representatives, distributors, dealers, members, affiliates, and all persons acting in concert or participation with them from: (a) marketing the LG Televisions as "hospitality televisions" suitable for use as hotel IPTVs, (b) representing that the LG Televisions are suitable for use as part of hotels' Interactive Entertainment Systems for In-Room Entertainment, or (c) marketing the LG Televisions as compatible with the Quadriga Services.

5.      Monetary relief, including direct and consequential damages sustained by Plaintiff in an amount to be determined by the trier of fact;

6.      Prejudgment interest as allowed by law;

Mitchell
Silberberg &
Knupp LLP

7926760.3

1    7.    Attorneys' fees and costs as allowed by any applicable law or

2  contract; and

3    8.    For such other and further relief as may be just and proper.

4

5  DATED: August 8, 2016              MITCHELL SILBERBERG & KNUPP LLP

6                                     JEFFREY L. RICHARDSON
                                      ANDREW SPITSER

7

8                                     By:   /s/ Andrew C. Spitser

9                                           Andrew C. Spitser
                                            Attorneys for Plaintiff

10                                          Second Street Corporation

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

7926760.3

                                 33
                              COMPLAINT

1

## **JURY DEMAND**

2

3      Plaintiff Second Street Corporation hereby demands a trial by jury on all

4  matters and issues so triable.

5

6  DATED: August 8, 2016             MITCHELL SILBERBERG & KNUPP LLP
                                     JEFFREY L. RICHARDSON
7                                    ANDREW SPITSER

8

9                                    By:   /s/ Andrew C. Spitser
                                           Andrew C. Spitser
10                                         Attorneys for Plaintiff
                                           Second Street Corporation
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

7926760.3

COMPLAINT